50 CCPA

## Application of Maurice W. FORTNEY.

### Patent Appeal No. 6887.

United States Court of Customs
and Patent Appeals.

Jan. 16, 1963.

Martin, J., and Worley, C. J., dissented in part.

W. D. Keith, New York City, Edwin R. Hutchinson, Washington, D. C. (William C. Babcock, Long Beach, Cal., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

The sole question in this case is whether the patent claims on appeal are supported by the disclosure of appellant's application. The invention is a paper container for units of leavened dough such, for example, as ready-to-bake baking powder biscuits.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 32–35 and 38 of application Ser. No. 294,631, filed June 20, 1952, for "Pressure Carton." All claims on appeal stand rejected as not supported by the application disclosure.

According to the examiner's final action, the application at bar was involved in interference No. 88,835 with a patent. Claim 32 was the count in the interference, which was terminated by dissolution on the patentee's motion to dissolve based on lack of supporting disclosure. The applicant (appellant here) moved to add claims 33–38 as counts in the interference, which motion was denied, also for lack of supporting disclosure. The applicant also presented by amendment claims 39, 40 and 41 which the examiner initially rejected as presented too late.

The applicant appealed to the board on claims 32–38 and simultaneously petitioned to have claims 39–41 entered for purposes of appeal. The examiner then treated the petition as a request for reconsideration of his final rejection, entered the amendment, and allowed claim 39. Claims 40 and 41 he rejected as lacking support in the applicant's disclosure. He had previously allowed claims 1–8, 13–16, 30 and 31. The appeal to the board was initially taken on claims 32–38 but by the examiner's action subsequent to appeal 40 and 41

also became included. In his answer, the examiner again changed his position and allowed claims 40 and 41. Those claims, as well as the other claims on which appeal to the board was taken, were stated by the examiner in his answer to have been copied from Fienup et al. patent No. 2,793,126. The record here contains no copy of that patent and so it is not before us.

The board reversed the examiner's rejection of claims 36 and 37 and affirmed the rejection of the remaining claims. Though it is not germane to the issue before us, as appellant admits, his brief informs us, and the statement is not questioned, that due to the board's allowance of claims 36 and 37 a new interference has been declared between the "junior party's patent and appellant's application." It seems clear that the "junior party's patent" is the Fienup et al. patent mentioned above.

While what we have before us is an ex parte appeal, the situation is somewhat out of the ordinary in that the real question is the right to make claims copied from a patent with which the appellant was formerly in interference, the grounds of rejection of the appealed claims being the same as the grounds on which the examiner granted a motion to dissolve and denied a motion to add counts in the interference, the parties are back in interference due to the reversal of the examiner by the board on two claims, and we here have to decide the right of the applicant to make the residual claims on appeal.

■ Appellant has briefed this appeal on the theory that no points of law are involved and that we have only fact questions to decide. As we view the matter, however, the facts—what the claims say and what the application discloses—are undisputed and what we have before us is a question of law, namely, whether the disclosure supports the claims. Another obvious point of law is involved at the outset, namely, by what rule are we to construe the claims? Under the circumstances of this case, at least, we are go-

ing to give their language the broadest construction it will reasonably support, while regarding all limitations as material.

The questions are not the same as to all of the appealed claims. Claims 32, 33 and 34 can be considered together, however, since 33 and 34 are dependent on 32 and the limitation allegedly unsupported is in parent claim 32. In claims 35 and 38 a different limitation is involved, relating to another feature of construction.

All claims define structure which constitutes, in the opening words of each independent claim, "A dough package." To describe, in a general way, the package disclosed by appellant, it is a cylindrical cardboard container capped with metal ends. The wall of the container is made of two principal layers, an inner layer with a helical seam extending from one end to the other and capable of being opened up on twisting the ends of the tube in opposite directions, and an outer layer adhered to the inner layer so as to keep it from opening up but having a rip-strip formed by two parallel, helical score lines, the rip-strip overlying the helical seam of the inner layer. A descriptive thin paper label is pasted on the outside and the dough units are contained in a wrapper of paper-backed foil which is forced into intimate contact with the inner wall of the container by gas pressure generated in the leavened dough. To open the package, one end of the rip-strip is grasped, the strip is torn out, thus exposing the helical seam in the inner layer, the ends are twisted to open up the seam, and, in the words of the specification, "the package * * * is completely vented and the wrapped dough readily removed."

With this explanation it should be easy to understand the specific structure defined by claim 32 which follows, wherein we have italicized the critical language giving rise to the issue of readability:

"32. A dough package comprising a container with dough contained therein and constructed to permit said dough to be bodily removed therefrom without mutilation, said said container comprising a *lined* inner fibrous body forming a generally cylindrical casing and having a generally helical separation line extending substantially the full length thereof and pitched to extend helically around substantially the complete circumference of the container, an outer reinforcing wrapping superposed about said inner body, said outer wrapping having a helical tear line out of register with said helical separation line permitting the container to be opened substantially the full length thereof at said separation line, and a pair of end closures positively clamped at the ends of the container to confine the contents therewithin, said dough being bodily removable from the container without mutilation thereof by grasping the container ends and twisting the same in opposite directions to *unwrap the container from the dough* throughout substantially the entire length of the package."

The issue of readability of this claim on appellant's disclosure has been reduced by the Patent Office Solicitor to a very specific point, namely, that this claim and the two others depending from it require that "a liner be unwrapped from the dough as a part of the container." In further explanation, the solicitor says that a part of the container defined in the claim is a *lined* inner body. He admits that appellant discloses such a structure. But, he says, the terminal clause of the claim requires that the opening operation remove a *lined container* from the dough, and that this is not done in appellant's device because the dough comes out of the cylinder (which has been opened by twisting) still in its wrapper which constitutes the liner of appellant's container structure. This is substantially the position of the examiner, which the board supported. The board expressed its own view by saying the claim requires "the container to be lined and arranged to strip the *lined container* from the dough."

[redacted] We do not agree with the interpretation of the Patent Office tribunals. They admit that every element of the *structure* defined in the claim is to be found in appellant's disclosure, including the presence of the liner. As we read the claim, the structural elements of the package are fully pointed out in that portion preceding the last comma and ending with the word "therewithin." The final clause is a description of the *process* by which the container structure is emptied. Read in its context it is merely a clause stating *how* the *already fully defined structure* can be manipulated to get the dough out of it. If the dough comes out of the inner body and outer wrapping with the liner elements of the inner body still surrounding it, it still remains true that the container is *unwrapped* from the dough by twisting its ends. If the claim is given the construction placed on it by the Patent Office, it would limit the structure to one in which the liner is so fastened to the inner body as to be broken open with it and thus removed from the dough. But we are unable to find in the description *of operation* at the end of the claim a structural requirement that the liner for the inner body be attached to it. The common meaning of the verb "line" and its past participle "lined" does not require attachment of the lining to the thing lined. Webster's 2nd definition, with appropriate example, is an illustration:[1]

> "To put something in the inside of; to fill; supply.
>
> " 'And then the justice,
>
> " 'In fair round belly with good capon *lined.*'
>
> "*Shak.*"

Reading the final clause of claim 32 without reference to its origin (about which the record gives us no information except that it also appears in the Fienup et al. patent), we feel that the statement relied on to import into the claim the limitation on which the rejection is based is nothing more than a statement that the defined container structure is opened, *inter alia*, by twisting its ends in opposite directions. While this is certainly an essential part of the process of getting the dough out of its container, it is not necessarily the complete process. It may still be necessary to take the dough out of the foil wrapping.

For the foregoing reasons, we believe the Patent Office reads into claims 32, 33, and 34 a limitation not required by the terms of the claim and that it erred in rejecting these claims in appellant's application as unsupported by the disclosure thereof.

[redacted] We turn now to claims 35 and 38. These claims are directed to the same general combination of elements as the claims discussed above but they describe the outer wrapping and it functional relationship to the inner wrapping in different language which gives rise to another issue of nonreadability on applicant's disclosed structure. It will be recalled that applicant discloses an outer wrapping with parallel helical score lines defining a rip-strip which overlies the separable helical joint in the inner body and that when the rip-strip portion of the outer wrapper is detached, the inner body can be opened along its joint by twisting the ends of the package.

Claim 35 thus describes the outer wrapping:

> "* * * an outer reinforcing wrapping superposed about said inner body and *detachably* held therearound, said outer wrapping having at least a readily detachable peeling edge portion to facilitate *unwrapping* and removal thereof from the inner body *to permit expansion of the inner body by separation at said helical separation line substantially from end to end of the container* * * *." [Emphasis ours.]

The Patent Office position is that this language requires that the outer wrapping be "wholly detachable from the inner body," that nothing less than the disclosure of an outer wrapping detachable in its entirety will support that claim

1. Webster's New International Dictionary, p. 1436 (2nd ed., Unabridged 1956).

[redacted]

language. The appellant says that if all of the language relating to the outer wrapping, as above quoted, is taken into consideration, the claim does not compel such a conclusion.

It is notable that in discussing claim 35 the examiner, the board, and the solicitor for the Patent Office all omit any specific reference to, and appear to leave out of consideration, the italicized concluding portion of the above claim decription of the outer wrapping. It will be observed that the claim clearly contains no *specific* reference to the removability of the *entire* wrapping and that this meaning is read into the claim by the Patent Office by construing the words "detachably" and "unwrapping," the contention being that these words "obviously" and "clearly" refer to an outer wrapping detachable *as a whole* and not to a portion only of the outer wrapping. We see nothing so clear or obvious in the language and, in giving it the broadest reasonable construction, we think that full value must be given to the concluding functional language or statement of purpose, which obviously modifies the preceding words.

In our opinion, if detaching or unwrapping less than the entire outer wrapping will carry out the function expressly set forth in the claim as the raison d'etre for having an outer wrapping which is detachable or unwrappable, as detaching appellant's rip-strip portion of his outer wrapping will do, then *such* a partially detachable wrapping will support the claim. We believe that the final clause modifies the two words on which the Patent Office relies and that it was in error in construing them to have only the limited meaning of complete detachability.

Claim 38 involves very similar considerations as will be evident from the more verbose language of that claim defining the outer wrapping, which reads:

" * * * an outer reinforcing wrapping superposed about said inner body and *detachably* held therearound, said outer wrapping having at least a peeling edge portion readily detachable from the adjacent outer wrapping and from the inner body to facilitate *peeling off and removal* of the outer wrapping from the inner body *to expose said separation line and permit expansion of said inner body by separation along said helical separation line from substantially one end of the container to the other * * *.*" [Emphasis ours.]

Again the Patent Office in construing this portion of the claim has apparently given no weight to the concluding functional limitation on the detachability of the outer wrapping, concluding that "Clearly, the claim requires an outer wrapping wholly detachable from the inner body, and not, as appellant contends * * *, detachable from the inner body only at the helical separation line." We cannot agree. A wrapping which can be detached, or unwrapped, or peeled off and removed *to the full extent required* to permit the expansion of the inner body by separation along its helical separation line, as set forth in claims 35 and 38, provides adequate support for these claims which are, in all other respects, admittedly fully supported. Appellant discloses such a wrapping.

The decision of the board affirming the rejection of claims 32, 33, 34, 35, and 38 is *reversed*.

Reversed.

MARTIN, Judge, with whom WORLEY, Chief Judge, joins (concurring in part and dissenting in part).

Although I agree with the majority concerning claims 32, 33 and 34, I disagree with reference to claims 35 and 38.

As I understand appellant's disclosure, the outer wrapping is adhered to the inner body of the container except along a helical circumferential line over which line a ribbon is placed in such a manner that when the tear strip in the outer wrapping is unwound both the inner body and the outer wrapping will open along the helical line. If this be true, language claiming such a structure would more accurately describe the structure by stat-

ing—an outer reinforcing wrapping superposed about said inner body and *attached thereto* except along a narrow helical strip—rather than, as stated in claim 35, "an outer * * * wrapping superposed about said inner body and *detachably held therearound* * * *." [Emphasis mine.] I do not think of two bodies which are glued together except along a narrow strip as being "*detachably held therearound.*" [Emphasis mine.]